| | | |
|---|---|---|
| PAULA NEWSOME, | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. 3:24-CV-00249 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FIRST AMENDED COMPLAINT |
| | ) | |
| BARCLAYS BANK DELAWARE and | ) | |
| JOSE L. PEREZ d/b/a Team Perez, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PRELIMINARY STATEMENT**

1. This is an action for declaratory relief, actual damages, statutory damages, and attorney fees for violations of the Fair Credit Billing Act (part of the Truth in Lending Act), 15 U.S.C. § 1666 ("FCBA"), the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. (the "NCDCA"), and North Carolina's unfair and deceptive acts or practices statutes, N.C. Gen. Stat. § 75-1.1 et seq. ("UDAP").

**JURISDICTION AND VENUE**

2. Jurisdiction of this Court arises under 28 U.S.C. § 2201, 15 U.S.C. § 1640(e), 15 U.S.C. §1691e(f) and 28 U.S.C. § 1331.

3. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff is a natural person, residing in Mecklenburg County, who entered into an open-end credit transaction, namely a Mastercard account, with Barclays Bank Delaware (the "Bank") for personal, family, and household purposes.

6. The Bank is a banking entity organized under the laws of Delaware. At all relevant times, the Bank, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a MasterCard, on which the Bank assessed finance charges. At all relevant times, the Bank did business throughout the State of North Carolina, including Mecklenburg County.

7. Jose L. Perez ("Perez," and together with the Bank, the "Defendants") is a natural person, residing in Iredell County, North Carolina, doing business as Team Perez. At all relevant times, Perez, in the ordinary course of business, regularly engaged in construction and remodeling work throughout the State of North Carolina, including Mecklenburg County.

## FACTUAL ALLEGATIONS

8. Plaintiff had a Mastercard credit card account with the Bank for an account ending in 8948 (the "Account"). The Account was opened for personal, family and household purposes.

9. On or about February 20, 2022, Plaintiff contracted with Perez for the performance of interior and exterior construction and remodeling work for the real property located at 2469 Elkwood Circle, Charlotte, North Carolina 28205.

10. The contract price was for $24,000, to be paid in three installments: one third at signing, one third at the halfway point as determined by Plaintiff, and one third upon completion of the job.

11. However, on or about February 20, 2022, Perez unlawfully and improperly initiated a credit card charge to the Account for $32,500 (the "Erroneous Transaction").

12. Due to an agreed upon modification to the contract, Plaintiff subsequently paid Perez a total of $24,350 by a series of checks.

13. On information and belief, the Bank issued billing statements on the 21st or 22nd of each month. Accordingly, the March 21 or March 22 billing statement would have been the first billing statement reflecting the Erroneous Transaction.

14. On or about May 2, 2022, within sixty days of the March 21-22 and April 21-22 billing statements, Plaintiff sent the Bank written notice of the Erroneous Transaction, a copy of which is attached as **Exhibit A**.

15. The Bank ultimately credited $24,000 to the Account but refused to credit the remaining $8,500 to the Account.

16. The Bank failed to reasonably investigate, did not correct the billing error, and the $8,500 charge (and associated interest and fees) remained on the Account and in the billing statements.

17. On or about June 28, 2022, within sixty days of the May 21-22 and June 21-22 billing statements, Plaintiff sent the Bank another written notice of the Erroneous Transaction, a copy of which is attached as **Exhibit B**.

18. Again, the Bank failed to reasonably investigate, did not correct the billing error, and the $8,500 charge (and associated interest and fees) remained on the Account and in the billing statements.

19. On or about September 19, 2022, within sixty days of the July 21-22 and August 21-22 billing statements, Plaintiff sent the Bank another written notice of the Erroneous Transaction, a copy of which is attached as **Exhibit C**.

20. Again, the Bank failed to reasonably investigate, did not correct the billing error, and the $8,500 charge (and associated interest and fees) remained on the Account and in the billing statements.

21. On or about November 11, 2022, within sixty days of the September 21-22 and October 21-22 billing statements, Plaintiff sent the Bank another written notice of the Erroneous Transaction, a copy of which is attached as **Exhibit D.**

22. Again, the Bank failed to reasonably investigate, did not correct the billing error, and the $8,500 charge (and associated interest and fees) remained on the Account and in the billing statements.

23. Plaintiff sent supporting documentation with one or more of her disputes, but the Bank failed to consider such documentation.

24. While disputing the Erroneous Transaction, Plaintiff, within her legal right, withheld payment to the Bank for the Erroneous Transaction.

25. Finally, by letter dated December 12, 2022, the Bank informed Plaintiff that it was not able to assist Plaintiff with a credit of $8,500 to the Account.

26. The Bank ultimately closed the Account and turned the Account over to a collection agency.

27. The Bank's actions were part of a pattern or practice of failure to comply with obligations under the Fair Credit Billing Act.

28. As of result of Defendants' conduct, Plaintiff has suffered actual damages in the form of, among other things, lost credit, harm to her credit reputation and credit score, lost time, and frustration, aggravation, and inconvenience.

29. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants.

30. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff.

## COUNT I – DECLARATORY JUDGMENT
## (DEFENDANTS)

31. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

32. An actual and genuine legal controversy, and the need for a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. 2201 and the Uniform Declaratory Judgment Act, N.C.G.S. § 1-253, *et seq.*, exists between Plaintiff and Defendants with respect to, without limitation, Perez charging and retaining $8,500 and the Bank's claim against Plaintiff for the $8,500 plus interest and fees.

33. Plaintiff is entitled to a declaratory judgment in her favor that declares that Perez was not entitled to charge Plaintiff $8,500 and retain the $8,500, and that the Bank is not entitled to repayment from Plaintiff of the $8,500 plus interest and fees.

WHEREFORE Plaintiff demands a declaratory judgment stating that Perez was not entitled to charge Plaintiff $8,500 and retain the $8,500, and that the Bank is not entitled to repayment from Plaintiff of the $8,500 plus interest and fees.

## COUNT II – FAIR CREDIT BILLING ACT
## (THE BANK)

34. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

35. The Bank's billing Plaintiff for the $8,500 plus interest and fees for property or services not delivered Plaintiff constitutes a billing error within the meaning of the FCBA.

36. As discussed more fully in paragraphs 14 – 22, above, Plaintiff timely notified the Bank of the billing error by submitting to the Bank written notices of the billing error within sixty days of receiving the billing statements that contained the error.

37. With each of Plaintiff's disputes, the Bank violated the Fair Credit Billing Act by failing to correct the Account or perform a reasonable investigation that 15 U.S.C. § 1666(a)(3)(B) requires.

38. As a proximate result of the Bank's violations of the Fair Credit Billing Act, Plaintiff has suffered and is entitled to actual damages (including mental and emotional distress), statutory damages in an amount not exceeding $2,000, plus costs and attorneys' fees. 15 U.S.C. §1640(a).

WHEREFORE Plaintiff demands judgment for actual and statutory damages, costs, and attorneys' fees against the Bank.

### COUNT III – NCDCA
### (THE BANK)

39. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

40. The Bank was a "debt collector" within the meaning of N.C.G.S. § 75-50(3).

41. Plaintiff was a "consumer" within the meaning of N.C.G.S. § 75-50(1).

42. The $8,500 (plus interest and fees) was a "debt" within the meaning of N.C.G.S. § 75-50(2).

43. In each of the several billing statements that reflected the amount of the Erroneous Transaction of $8,500 (plus interest and fees) and several harassing phone calls and emails, the Bank falsely represented the character, amount, or extent of a debt. In so doing, the Bank violated

6

Case 3:24-cv-00249-KDB-DCK     Document 10     Filed 05/09/24     Page 6 of 13

N.C.G.S. § 75-54(4), which prohibits the false representation of the character, amount or extent of a debt. The representations were false because Plaintiff did not authorize the debt represented by the Erroneous Transaction.

WHEREFORE Plaintiff demands judgment against the Bank pursuant to N.C.G.S. §§ 75-16.1 and 75-56 for actual damages, treble damages, civil penalties between $500 and $4,000 for <u>each</u> violation of the NCDCA, and attorneys' fees and costs.

### COUNT IV – UDAP
### (THE BANK)

44. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

45. The Bank's activity constitutes commerce with the meaning of North Carolina's UDAP statutes.

46. Without limitation, in the course of the transactions, acts and omissions, the Bank engaged in the following conduct.

   a. Closed the Account and turned it over to collections;

   b. Violated the Fair Credit Billing Act, as set forth above.

47. This conduct, in turn, violated North Carolina's UDAP statutes, N.C. Gen. Stat. § 75-1.1 *et seq*.

48. As a proximate result of the Bank's acts and omissions, Plaintiff has suffered and continues to suffer, actual damages (including mental and emotional distress, humiliation, embarrassment).

WHEREFORE Plaintiff demands judgment against the Bank for actual damages, treble damages, and attorneys' fees and costs.

## COUNT V– UDAP
## (PEREZ)

49. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

50. Perez's activity constitutes commerce with the meaning of North Carolina's UDAP statutes.

51. Without limitation, in the course of the transactions, acts and omissions, Perez engaged in the following conduct.

   a. Unlawfully and improperly charged Plaintiff's credit card for $32,500;

   b. Unlawfully and improperly retained $8,500;

   c. Misrepresented to the Bank and Plaintiff that he was entitled to the $8,500; and

   d. Refuses to refund Plaintiff the $8,500.

52. This conduct, in turn, violated North Carolina's UDAP statutes, N.C. Gen. Stat. § 75-1.1 *et seq*.

53. As a proximate result of Perez's acts and omissions, Plaintiff has suffered and continues to suffer, actual damages (including mental and emotional distress, humiliation, embarrassment).

WHEREFORE Plaintiff demands judgment against Perez for actual damages, treble damages, and attorneys' fees and costs

### DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

Respectfully Submitted,

*/s/ Rashad Blossom*

8

Rashad Blossom (State Bar No. 45621)
BLOSSOM LAW PLLC
301 S. McDowell Street, Suite 1103
Charlotte, NC 28204
P: (704) 256-7766
F: (704) 486-5952
rblossom@blossomlaw.com

9

May 2, 2022

Dear Barclays Representative,

At one point in my life, I owned 20 plus houses in Charlotte so am very familiar with shady contractors.

This one may take the cake.

I was referred to this contractor by my roofer John. John said to let him know if the work were up to par of not. We signed a contract stipulating the scope of work, the timeline and the payment schedule.

The day that we agreed on the contract and it was signed by both parties, I got an email.

First of all, the email came from an email that I did not know and his name was no where on the email.

Additionally, it was for the entire amount of the project which was $24,000 to be paid in thirds. One third at the beginning, one third in the middle and one third at the end.

That evening, I got an email saying that I owed $24,000. I changed the amount to the $8000 that I was supposed to pay. The way that they have the account set up, when I put the $8000 in the place to pay, it charged my card $32,000. I immediately called Barclays and sent him a text and said what are you doing and who is this that is charging my card $32,000 instead of the $8000 that was due.

I then told him that because of how his (he said it was his wife's) credit card payment system was set up, I would not be paying him by credit card but by check AND that I still did not know who I was paying.

The invoice came from a Natalie Martinez whom I had no knowledge of and when I sent them an email and called them scammers because I thought that she was (according to him she is his wife.) At any rate, I called you and asked you to stop payment because:

1. The amount of the project was $24,000
2. The amount that they were charging was $32,000.
3. I had no knowledge of who Natalie Martinez was and did not want her to have my credit card information. (natal.0507.05@gmail.com)
4. This action caused my blood pressure to go up and to really have a meltdown since I did not know but was too trusting of the situation.
5. Please note the different email addresses sent to me.

If you have an email address, I am happy to forward you several documents including the numerous emails, contract, text messages, etc.

The final payment of $7,000 was paid on April 25, 2022. I took my accountant with me to witness.
He has cashed all of the checks and finally paid him $24,350. Per the one additional charge that I agreed to.

Thank you for the opportunity and please feel free to call me with any questions or concerns.
Best regards,
Dr. Paula R. Newsome        Paula R. Newsome 5/2/2022

Exhibit A

June 28, 2022

Dear Executive Suite Team,

I have been a LONG time client of yours and so disgusted with this experience that I am considering closing my account with you.

Your company continues to hold an $8500 charge out on my account that I never made. In fact, I have no idea where you are getting that amount from. Your offshore representatives are not able to understand nor are they doing a good job for you.

It is very frustrating to continually get people in a foreign country who do not understand what is going on. I was not the one who said that the action was fraudulent, your people were and it truly was a fraudulent act when instead of charging me one third of a transaction, they charged me the entire transaction plus the one third deposit of $8000. I showed you evidence of all of this and you still have not credited my account as I wrote the contractor checks and did not charge anything.

Why or how you are holding me responsible for this $8500 when he was paid in full is beyond me. The last time I called your company, I was told that this would be credited while it was being disputed although it is showing up as a balance not paid.

It is real frustrating calling and giving out the same information over and over with no resolution. I NEVER made an $8500 payment to anyone because I don't owe it.

Thank you for your attention.

Best regards,


Paula Newsome, OD, MS, FAAO, FAARM, CHC

Exhibit B
Case 3:24-cv-00249-KDB-DCK    Document 10    Filed 05/09/24    Page 11 of 13

September 19, 2022

Dear AA Mastercard Representative,

I have written you several times stating that I never made a charge that you are charging me for and are also charging me interest since February 20, 2022.

For what ever reason, you think this is a disputed charge but YOUR company initiated this action NOT me and it is affecting my credit score and the Perez company is being dishonest and has taken your money.

This is not a threat but if you do not get this resolved, I am going to take this to the attorney general's office as I don't understand why we are at this juncture.

On February 20, I entered into a construction contract with a con man. At the time, I was referred to him but a guy that had done an excellent job on my roof but this guy (Jorge Perez has not integrity and while we were doing business, he got a brand new truck because he said something was wrong with it without paying so I know he is a con artist.

I am appalled that this has lasted this long and am tired of talking to people outside the US and being told that someone would call me back. This is not a dispute

I am enclosing several letters that speak to what happened and am happy to discuss this again but this is affecting my credit report and it is also affecting my credit score.

Thank you for your attention and prompt response.

Sincerely,

*[signature]*

Dr. Paula R Newsome

1/11/2022

Dear Customer Service Representative,
This is my fifth time writing you with no response, no resolution and you are still holding a charge on my card that I NEVER did make for $8,500 to a Team Perez fraudulently.

Since that time, you have charged me interest, you have charged me fees and that has impacted my credit core. Once this issue is resolved, you never have to worry about me being your customer ever again.

I have been card holder of yours for decades and have always paid you promptly and typically the entire balance when due.

I was going to have so work done on a rental house that I own. The TOTAL amount of the job was $24,000 to be paid in 3 installments. When I went to pay the first installment, via credit card, rather then the Perez scammers charging my card $800, they charged it $800 plus $24,000. I immediately texted them and called them with no response so I called you and asked you to please cancel the transaction and give me a new card.

Somewhere between February 2022 and May, 2022, BARCLAYS charged my card $32,500 and then you credit3ed $24,000 as if the original contract was for $32,500.

It never was. Since that time, you have been charging me interest and my credit score has fallen.

This is going to be my last attempt to settle this.

If you do not settle this immediately and credit the charges, the fees and the $8,500 off my account, you will leave me no choice but to file charges with the Attorney General's office and contact legal counsel.

Thank you for your prompt attention to this matter which has been dragging out way too long.

Please contact me with any questions art 704 375-3935.
Best regards,
Dr. Paula R. Newsome

Acc't Ending in: 8948-
Case ID: CIS 145-4182